This was objected to, and the objection overruled, and the witness answered: "Yes, sir. I couldn't state time or the month. It was within six months." None of these witnesses were able to specify more particularly the occasions when they saw the relator in these places. There are a number of other instances of a like character that appear in the case. The extreme difficulty of defending against charges so indefinite is apparent, and the evidence received under these charges illustrates the propriety of charges being more specific and definite in their nature than those now before us. I do not mean to say that in all instances a specific time or place must be alleged, and proved as alleged, but the time and place should be at least approximately stated, and the time or times upon or between which the offenses are alleged to have occurred should be stated within reasonable limits, so that the party accused may be apprised with reasonable certainty of what he must be prepared to meet. A charge, although it specifies the particular kind of offense, is not a definite charge when it specifies neither time nor place; and, under the statute first above cited, a person can only be removed upon a definite charge.

The proceedings of the defendant should therefore be reversed, and the relator restored to his position as an officer of the police force of the city of Ithaca, with $50 costs and the disbursements of this appeal. All concur.

---

(38 App. Div. 939.)

In re BIEBER et al.

(Supreme Court, Appellate Division, First Department. March 24, 1899.)

1. ASSIGNEE FOR CREDITORS—REMOVAL—REFERENCE—CONDITIONED ON PAY-MENT OF EXPENSES.

The court refused to remove an assignee upon affidavits, but permitted the moving creditor to take a reference, upon the condition that, if he failed to convince the court that the assignee ought to be removed, he would pay the fees of the referee and stenographer, together with all disbursements. A reference was had, and hearings continued until the referee's fees amounted to $2,000, and there remained unpaid more than $1,500 stenographer's fees. In the meantime the assignors had been adjudged bankrupts, and the assignee directed to turn over the property to the receiver in bankruptcy. The reference had not been completed, and the assignee had not succeeded in exonerating himself from the charges made, when he moved that the reference be terminated, on the ground that he had been superseded by the bankruptcy proceedings. The moving creditor objected. *Held*, that the motion would be denied, if the creditor paid the expenses of the reference incurred, and gave security for their payment in the future, and on his failure to do so the reference will be stayed, and the creditor required to pay the expenses of the reference.

2. SAME—ACCOUNTING—AFTER APPOINTMENT OF RECEIVER IN BANKRUPTCY.

Although an assignee for creditors has been superseded by proceedings in which the assignor has been adjudged a bankrupt, and the assignee directed to turn over the estate to a receiver in bankruptcy, he may be required to account in the state court.

Appeal from special term.

Motion by assignee to terminate a reference, to ascertain facts relating to motion for his removal. Granted conditionally, and creditor appeals. Affirmed.

The following is the opinion of the court below (SCOTT, J.):

The insolvents on July 11, 1898, made a general assignment to an attorney of this court, who accepted the trust and took possession of the assigned property. A motion was subsequently made by a creditor for the removal of the assignee; the motion being based upon charges of such flagrant wrongdoing on the part of the assignee that, if they are true, he not only should be removed from his trust, but would richly deserve expulsion from the bar. The justice before whom this motion was heard refused to remove the assignee upon affidavits, but permitted the moving creditor to take an order of reference, upon the onerous condition that, if he failed in his attempt to convince the court that the assignee ought to be removed, he would personally pay the fees of the stenographer and referee, and all the disbursements incurred upon the reference. This condition the creditor accepted, and an order of reference was accordingly made. A great many hearings have been had before the referee, and a great mass of testimony taken, so that now there is some $2,000 due the referee, and the stenographer's fees have amounted to upwards of $2,000, of which more than $1,500 remains unpaid. The reference has not yet been completed. The moving creditor insists that the evidence so far taken tends to confirm absolutely all the charges made against the assignee. The assignee contends that all these charges can be successfully met. It seems to be certain, however, that he has not yet exonerated himself, and, from some of the explanations proffered in his affidavits, it is by no means clear that he can successfully meet all of the charges. In the meantime the assignors have been adjudicated bankrupts in the United States district court, a receiver has been appointed by that court, and the assignee has been ordered to turn over all of the assets of the estate to such receiver. The assignee now moves that the reference upon the motion to remove him be terminated, upon the ground that he has been superseded by the receiver appointed in the district court. The petitioning creditor opposes the motion. The situation thus presented is an unusual one. As will have been seen, the petitioning creditor will be obliged, in any event, to pay in the first instance the whole expense of the reference. If he sustains his charges, he may be able to obtain reimbursement out of the estate, although that is now doubtful. If he fails, he can hope for no reimbursement. On the other hand, the assignee, an attorney, has been made the subject of most serious charges, preferred under oath, and has not, up to the present time, been proven to be innocent of them. It would not have been surprising, under these circumstances, if we had found the creditor moving for a discontinuance of the reference, and the assignee protesting that it should not be ended until he had had a full opportunity to rebut the aspersions upon his character. What we do find is just the opposite,—the assignee seeking to end the inquiry as to his honesty, and the creditor insisting upon its completion. So far as the assignee is concerned, the motion does not commend itself. There are other considerations, however, which must be taken into account. The referee and the stenographer are entitled to some protection. The former at least probably feels himself bound, as an officer of the court, to proceed with the inquiry until relieved by the court. The stenographer, while at liberty to refuse to proceed further, has already earned a very large sum. If the reference were to stop now, it is possible that the expenses already incurred might be allowed in the bankruptcy court out of the estate; but if it proceeds further, it is quite improbable that such expenses will be so allowed. As has been said, whatever may be the outcome of the reference, the expenses must, in the first instance, at least, be paid by the moving creditor. It is not unreasonable, therefore, to require of him, if he desires to proceed with the reference, that he pay the expenses incurred up to the present time, and give reasonable security for the payment of those that may accrue hereafter. If he do this, the motion will be denied, with $10 costs. If he be unwilling to comply with this condition, the reference will be stayed; and since, in that case, the moving creditor will have failed in his attempt to remove the assignee, he will be required, under the order of September 9, 1898, to pay the expenses of the reference. Whether the reference be stayed or not, proceedings should be taken to compel the assignee to account. Of course, any sum for which he may be found to be liable under such an accounting must be paid to the receiver in bankruptcy, and not to the creditors; but the assignee is under the jurisdiction of this court, and has

given a bond in the sum of $8,000, to which recourse can probably be had only after an accounting in this court. Settle order on notice.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

J. McG. Goodale, for appellant.
A. G. Todd, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of SCOTT, J., in court below.

---

(42 App. Div. 333.)

### DAVIS v. SMITH.

(Supreme Court, Appellate Division, Third Department. July 6, 1899.)

CONTRACTS—MUTUALITY.
Where defendant, having become owner of a creamery which had been corporate property, continued to carry on the business in the corporate name, and contracted with plaintiff under that name, plaintiff cannot repudiate the contract after performance on his part, on the ground that it was not defendant's contract, as both parties knew that defendant intended to bind herself.

Appeal from Sullivan county court.

Action by John F. Davis against Henry Smith, trustee under the will of Anna R. Kling, deceased, brought in justice's court, where judgment was recovered by plaintiff. On appeal to the county court, judgment was directed for plaintiff, and defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

James E. Kelly, for appellant.
John F. Anderson, for respondent.

LANDON, J. The complaint alleges and the answer admits that the plaintiff sold and delivered to the defendant's testatrix the milk in question. The delivery was in February and March, 1892. The plaintiff alleges that the milk was reasonably worth $2\frac{1}{4}$ cents per quart. The defendant alleges that it was sold and delivered under a contract covering the year from April 1, 1891, to April 1, 1892, and that by the terms thereof the defendant is entitled to credit for overpayments made to plaintiff for the milk delivered in the months previous to February and March, 1892. The general term, upon a former appeal, held that the defendant's contention as to the terms of the contract was right. 77 Hun, 598, 28 N. Y. Supp. 1026.

Upon the new trial, the court, after the contract had been received in evidence, struck it out, and thus deprived the defendant of his defense. Exception was duly taken to this ruling of the court. The ground for striking it out appears to have been that the contract was made with a corporation, and not with the defendant's testatrix. The undisputed evidence is to the effect that the defendant's testatrix carried on her creamery at which the plaintiff delivered the milk under